# JS-6

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

|  |  |
|---|---|
| MICHAEL VELASQUEZ,<br><br>   **Plaintiff,**<br><br> v.<br><br>KELLY SERVICES USA, LLC;<br>PHILLIPS-MEDISIZE COSTA MESA,<br>LLC; and DOES 1–10, inclusive,<br><br>   **Defendants.** | **Case No.: SACV 21-01179-CJC(DFMx)**<br><br>**ORDER GRANTING DEFENDANTS'<br>MOTION TO COMPEL<br>ARBITRATION AND STAY<br>PROCEEDINGS [Dkt. 23]** |

## I.  INTRODUCTION

Plaintiff Michael Velasquez brings this employment discrimination case against Kelly Services USA, LLC ("Kelly") and Phillips-Medisize Cost Mesa LLC ("Phillips"), his former employers.  (Dkt. 1-1 [Complaint, hereinafter "Compl."].)  Now before the Court is Defendants' motion to compel arbitration.  (Dkt. 23 [hereinafter "Mot."]; *see*

Dkt. 25 [Phillips-Medisize's Joinder in Motion].)  For the following reasons, Defendants' motion is **GRANTED**.[1]

## II.  BACKGROUND

### A.    Plaintiff's Allegations

Kelly—a company that specializes in the placement of temporary workers—hired Plaintiff on June 1, 2019, and immediately assigned him to work as a Medical Assembler for Phillips in Costa Mesa, California.  (Compl. ¶ 10; Mot. at 1.)  There, co-workers referred to Plaintiff as "that damn black guy," "Señor Chocolate," "Pinche Puto," and "Mayate."  (Compl. ¶¶ 10–11.)  Each time Plaintiff reported the harassment to his supervisor, the supervisor only retaliated against Plaintiff by moving him to a less desirable workstation.  (*Id.*)

On July 2, 2019, Plaintiff left work with a coworker, Sochetra Sao.  (*Id.* ¶ 12.)  On the way to his car, he found a cell phone on the ground.  (*Id.*)  He picked it up, intending to keep it safe and return it to management the next day.  (*Id.*)  But on his way home, Plaintiff "was confronted by a Hispanic man who accused Plaintiff of stealing his phone," "called Plaintiff the N-word and threatened to physically assault him at work the next day."  (*Id.*)

Fearing for his safety, Plaintiff called his supervisor.  (*Id.* ¶ 13.)  He reported that the phone had been returned to the owner, but stated that he did not feel safe to return to work.  (*Id.*)  Plaintiff's supervisor said that she would find Plaintiff another job

---

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing.  *See* Fed. R. Civ. P. 78; Local Rule 7-15.  Accordingly, the hearing set for October 18, 2021, at 1:30 p.m. is hereby vacated and off calendar.

assignment, but neither she nor other Kelly representatives have made any effort to do so. (*Id.*)  Plaintiff brings claims for (1) racial discrimination, (2) harassment on account of race, (3) retaliation for engaging in a protected activity, and (4) wrongful termination in violation of public policy.

### B.      The Arbitration Agreement

In order to work with Kelly Services to find temporary employment, a person must use an electronic application system known as "eRegistration."  (Dkt. 23-3 [Declaration of David Scott Stewart, hereinafter "Stewart Decl."] ¶ 2.)  This system allows applicants to electronically review, complete, and sign hiring forms, like releases for drug screening and reference checks, an employee handbook acknowledgement, and direct deposit pay options.  (*Id.* ¶¶ 2–3.)  Since November 2014, every new applicant for employment has been required to sign an arbitration agreement during the eRegistration process.  (*Id.* ¶¶ 4, 7.)  To complete the arbitration agreement form, an applicant must physically check acknowledgement boxes, and then click a button to apply the applicant's electronic signature to the form.  (*Id.* ¶ 7.)

On May 17, 2019, Plaintiff completed the eRegistration process with Kelly.  (*Id.* ¶ 15.)  He reviewed, completed, and signed the arbitration agreement, which is a stand-alone document titled "**DISPUTE RESOLUTION AND MUTUAL AGREEMENT TO BINDING ARBITRATION**."  (Stewart Decl. Ex. B [hereinafter "Arb. Agr."].)  Specifically, Plaintiff clicked a box affirming the following regarding the arbitration agreement: "**I acknowledge that I have carefully read this Agreement, that I understand its terms, and that I have entered into the Agreement voluntarily and not in reliance on any promises or other representations by Kelly Services.**"  (*Id.* at ¶¶ 16–17, 19.)

### III.  LEGAL STANDARD

Under the Federal Arbitration Act ("FAA"), a "written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of the contract."  9 U.S.C. § 2.  The FAA is "a congressional declaration of a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).  In light of this, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Id.* at 24–25.  The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original).  This Court's role is limited to determining "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Kilgore v. KeyBank, N.A.*, 718 F.3d 1052, 1058 (9th Cir. 2013) (en banc) (citation omitted); *see also* 9 U.S.C. § 2.

### IV.  ANALYSIS

There is no dispute over whether the Arbitration Agreement encompasses the dispute at issue.  For this element, the key question is whether the plaintiff's claims "fall[] within the scope of the parties' agreement to arbitrate." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000).  The Arbitration Agreement covers "all common-law and statutory claims relating to my employment, including, but not limited to, any claim for breach of contract, unpaid wages, wrongful termination, and for violation of laws forbidding discrimination, harassment, and retaliation on the basis of race, color, religion, gender, age, national origin, disability, and any other protected

status." (Agreement ¶ 2.) This clause plainly covers Plaintiff's claims, which arise out of his employment with Defendants and allege that he was discriminated against and harassed based on his race, and retaliated against for engaging in protected activity. (*See generally* Compl.) Plaintiff does not argue otherwise. Instead, Plaintiff argues that the Agreement to arbitrate is invalid.

"To evaluate the validity of an arbitration agreement, federal courts should apply ordinary state-law principles that govern the formation of contracts." *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003) (internal quotation marks and citation omitted). Thus, "[g]enerally applicable contract defenses . . . may be applied to invalidate arbitration agreements." *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 682 (1996). Here, Plaintiff argues that the Arbitration Agreement should not be enforced for two reasons: (1) California's AB 51 prohibits employers from requiring employees to agree to arbitration, and (2) the Arbitration Agreement seeks to compel arbitration under the laws of Michigan. (Dkt. 30 [Opposition].) Neither argument is persuasive.

First, Assembly Bill 51, later codified at California Labor Code § 432.6, applies only to "contracts for employment entered into, modified, or extended on or after January 1, 2020." Cal. Lab. Code § 432.6(h). Since Plaintiff entered into his contract for employment in 2019, the law does not apply to him. *See Nehme v. Garfield Beach CVS LLC*, 2021 WL 2865100, at *3 (C.D. Cal. June 14, 2021); *Powers v. Northrup Grumman Corp.*, 2020 WL 6381899, at *4 (S.D. Cal. Oct. 29, 2020) (noting that AB 51, signed into law on October 10, 2019, "is 'expressly not' retroactive"). In any event, AB 51 does not "invalidate a written arbitration agreement that is otherwise enforceable under the Federal Arbitration Act." Cal. Lab. Code § 432.6(f).

Second, the Court finds nothing unconscionable about the agreement's out-of-state choice of law provision. Under the FAA, an arbitration agreement is unenforceable when

it is invalid under "generally applicable contract defenses" recognized by state law, such as "unconscionability." *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). "Under California law, unconscionability has both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results." *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1210 (9th Cir. 2016) (quoting *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000)). Plaintiff has failed to show that the choice of law provision renders the Arbitration Agreement substantively unconscionable. Specifically, he has failed "to identify any conflict between California and Michigan substantive law, and, consequently, fail[ed] to show application of the Michigan choice of law provision would deprive him of a substantive protection afforded under California law." *Brown v. Dow Chem. Co.*, 2019 WL 484211, at *3 (N.D. Cal. Feb. 7, 2019). Moreover, Plaintiff has a statutory right to unilaterally void the Michigan choice of law provision should such a conflict arise. *See* Cal. Lab. Code § 925(b) (providing that a contractual clause that would deprive employee of "substantive protection of California law" is "voidable by the employee" and that if the employee elects to void such a clause, "California law shall govern the dispute"). Additionally, for a contract to be unconscionable, there must be *both* substantive and procedural unconscionability. *Uber Techs., Inc.*, 848 F.3d at 1210. Plaintiff has not even argued that the Arbitration Agreement is procedurally unconscionable.

In sum, the Arbitration Agreement that Plaintiff signed expressly provides that all disputes relating to his employment must be resolved through binding arbitration. (Arb. Agr. ¶¶ 1–2.) Because Plaintiff has failed to show that this Agreement was unconscionable, this Court shall enforce its terms. *See Kilgore*, 718 F.3d at 1058.

Defendants ask the Court to stay litigation pending resolution of arbitration. The FAA directs district courts to stay all proceedings pending completion of arbitration. *See*

9 U.S.C. § 3.  "[T]he power to stay proceedings is incidental to the power inherent in every court to control disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  Since the Court has determined that Plaintiff's claims are arbitrable, it will stay the case pending resolution of arbitration.

## V. CONCLUSION

For the foregoing reasons, Defendants' motion to compel arbitration and stay the proceedings is **GRANTED**.  The case is **STAYED** pending resolution of arbitration.

DATED:      October 4, 2021

CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE